DECISION
{¶ 1} In this original action, relator, Larry A. Morgan, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying a scheduled loss award for permanent partial disability ("PPD") under R.C. 4123.57(B) and to grant him an award for the loss of the right hand.
{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12, Section (M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended the requested writ of mandamus be denied. (Magistrate's Decision, Appendix A.) Relator has filed objections to the magistrate's decision. Relator's objections to the contrary, this court finds that the magistrate discerned the pertinent legal issues and properly applied the applicable law to those issues. Having completed independent review, we find no error in either the magistrate's decision or analysis and therefore relator's objections are overruled.
{¶ 3} In October 1998, relator sustained an industrial injury, involving the severing of all four fingers of the right hand, his dominant hand. The doctors reattached three fingers, but not the index finger. Relator received PPD compensation for the loss of four fingers and was later examined by Dr. Nancy Renneker. The doctor concluded that in view of difficulties relator was experiencing with his hand, that he had lost the use of his right hand due to the amputational loss of his fingers. Subsequent to Dr. Renneker's examination, relator was examined by Dr. Brian Higgins who noted relator had returned to his regular work, but reported "difficulty" in carrying a jug of milk, typing and writing. Dr. Higgins concluded with the opinion, relator had lost the use of his right hand due to significant ankylosis, limited range of motion and impaired feeling.
{¶ 4} Relator filed a motion to allow the claim for ankylosis of the three reattached fingers and requested PPD compensation for the loss of use of his hand. In March 2001, the Ohio Bureau of Workers' Compensation allowed relator's motion. However, in August 2001, relator was examined by Dr. Kiva Shtull who also reviewed relator's job description in both written and video graphic form. Dr. Shtull concluded relator had sustained a total loss of use of the middle finger, and opined relator had not lost the use of his hand beyond the impairment assessed for each of the fingers.
{¶ 5} In October 2001, a staff hearing officer affirmed additional allowances in the claim, but denied PPD compensation for the total loss of the hand and stated, in pertinent part:
{¶ 6} "The Staff Hearing Officer finds that the surgically reattached right 3rd, 4th, and 5th fingers are ankylosed. This is based upon visual inspection at hearing as well as the 01/31/2001 report of Dr. Higgins. This in and of itself however is not a basis for payment of any additional compensation since the claimant was already compensated for the loss of those fingers by reason of amputation.
{¶ 7} "The claimant is denied total loss of use of the right hand under Ohio Administrative Code 4123.57(B). That section requires that `the nature of the claimant's employment' is such that the disability or handicap from the amputation `exceeds the normal handicap or disability resulting from the loss of fingers.'
{¶ 8} "While the claimant has a tragic loss that affects many aspects of his daily living as he testified, the statute is only looking at the effect upon the workplace. While the claimant has many additional problems at work, he is still in the same job in which he was at when injured. The claimant hasn't proven that his problem `exceeds the normal' problems encountered by someone with several amputations."
{¶ 9} As appropriately alluded to by the magistrate, in her decision, the issue in this case is whether the commission abused its discretion in denying relator's request for a PPD award for the loss of his right hand. The magistrate recognized that R.C. 4123.57(B), while setting forth specific amounts of compensation for the loss of listed body parts, does not require that the loss result from amputation and that a claimant may recover for the loss of use of a body part. In the case sub judice, since relator had already been compensated under R.C. 4123.57(B) for the total loss of various fingers, even though three fingers were later surgically reattached, the issue remained whether such loss would exceed the usual disability experienced from such losses with respect to the use of the hand. The magistrate recognized that though the loss of several fingers would be devastating, and given the type of work that was to be performed, R.C. 4123.57(B) could provide additional compensation for the loss of a hand.
{¶ 10} The magistrate correctly concluded that while the statute allows for an increased award where a claimant experiences a greater than normal disability from the loss of fingers than other workers, due to the nature of the work of the claimant, such an award is still a matter given to the discretion of the commission based upon all the evidence.
{¶ 11} As alluded to in the magistrate's decision, the commission recognized that although relator's injury had been severe, it was not worse than the usual disability experienced by a worker who suffers a multiple loss of fingers since it was apparent from the record that relator had returned to supervisory work and there was no showing that his condition caused him to experience a greater disability than that usually experienced by persons losing a number of fingers on the same hand. Thus, the magistrate concluded that the commission's reasoning was consistent with the medical evidence and other evidence relating to the claimant's actual job activities. The magistrate therefore concluded there was no abuse of discretion by the commission in denying the additional award for loss of the hand.
{¶ 12} Following independent review pursuant to Civ.R. 53(C), we find that the magistrate has properly determined the pertinent facts and applied the salient law thereto. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.
{¶ 13} In accordance with the recommendation contained in the magistrate's decision, and having overruled relator's objections to the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
BOWMAN and LAZARUS, JJ., concur.
 APPENDIX A IN MANDAMUS
{¶ 14} Relator, Larry A. Morgan, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying a scheduled-loss award for permanent partial disability ("PPD") under R.C. 4123.57(B), and to grant him an award for the loss of the right hand.
Findings of Fact:
{¶ 15} 1. In October 1998, Larry A. Morgan ("claimant") sustained an industrial injury, cutting off all four fingers of the right hand, his dominant hand. Surgeons were able to reattach three fingers but not the index finger. His workers' compensation claim was allowed for an amputation injury to four fingers.
{¶ 16} 2. Claimant was awarded PPD compensation for the loss of each finger. For the loss of 100% of the index finger, he was awarded $18,935. For the loss of 100% of the middle finger, he was awarded $16,230. For the loss of 100% of the ring finger, he was awarded $10,820, and for 100% loss of the little finger, the award was $8,115.
{¶ 17} 3. After about four months, claimant returned to his job as a supervisor, although the use of his right hand was limited and he was restricted to light duty. Claimant had further absences due to additional surgeries to help him gain more function and flexibility, including procedures for tendon reconstruction and release of contractures. He missed about a year of work altogether.
{¶ 18} 4. In November 2000, claimant was examined by Nancy Renneker, M.D., who noted claimant's report that the reattached fingers were numb and sensitive to cold. Claimant was unable to make a tight fist but he could hold a cup of coffee. He was able to write with his right hand. He explained that writing was easier with a fat pen but was generally painful and difficult, and that he could write only a few words at a time without resting. He said that, in his job as a supervisor, he signed timecards and wrote job assignments. Dr. Renneker noted that claimant would be unable to perform tasks such as climbing a ladder.
{¶ 19} On examination, Dr. Renneker noted the stump of the right index finger but observed that the other fingers had been reattached. The middle finger had an active range of motion at the MP joint but the PIP joint and DIP joints were stiffened in a flexed position. The ring finger had an active range of motion at the MP joint but the PIP and DIP joints were stiffened in a flexed position. The right little finger also had motion at the MP joint but not at the other joints. The right wrist did not have full flexion, and the right forearm was limited in pronation and supination (turning palms up, palms down). Dr. Renneker opined that claimant had lost the use of his right hand due to amputation of four fingers. She further opined that claimant lost the use of his right arm, due to the loss of the hand, limited motion of the wrist, and limited motion of the forearm.
{¶ 20} 5. In January 2001, claimant was examined by Brian Higgins, D.O., who noted that claimant had returned to his regular work but reported "difficulty" carrying a jug of milk, typing, and writing. Dr. Higgins observed that the index finger was amputated at the PIP joint but had flexion of 95 at the MP joint. At the middle finger, Dr. Higgins found MP flexion to 55 and extension to within 15 of full extension. The other joints were stiffened in a flexed position. The ring finger showed MP flexion to 50 but the other joints were stiffened. The little finger showed flexion to 90 and extension to within 20 of full extension. Dr. Higgins opined that claimant had lost the use of his right hand due to significant ankylosis, limited range of motion, and impaired feeling.
{¶ 21} 6. Claimant filed a motion to allow the claim for ankylosis of the three reattached fingers, and also requested PPD compensation for the loss of use of his hand. In March 2001, the Bureau of Workers Compensation granted the motion.
{¶ 22} 7. In August 2001, claimant was examined by Kiva Shtull, M.D., who reviewed the job descriptions, both written and videographic. He concluded that claimant had sustained a total loss of the middle finger. However, Dr. Shtull found that claimant had not lost the use of his hand beyond the impairment assessed for each of the fingers. He made the following specific findings. The index finger was amputated at the PIP joint, with active MP flexion of 90 and extension lacking 15 . The middle finger was reattached but the PIP joint was ankylosed, the active flexion of the DIP joint was minimal, and MP flexion was 80 and extension lacking 15 . He thus opined that claimant had lost the total use of the middle finger. The ring finger showed that both the DIP and PIP joint were ankylosed in flexed position. Active MP flexion was 80 and extension lacking 15 . As to the little finger, the PIP joint was not ankylosed but had no active range of motion. The MP joint showed flexion at 80 with 0 extension. The DIP joint was ankylosed.
{¶ 23} 8. In August 2001, a district hearing officer affirmed.
{¶ 24} 9. In October 2001, a staff hearing officer affirmed the additional allowances but denied PPD for total loss of the hand:
{¶ 25} "The Staff Hearing Officer finds that the surgically reattached right 3rd, 4th, and 5th fingers are ankylosed. This is based upon visual inspection at hearing as well as the 01/31/2001 report of Dr. Higgins. This in and of itself however is not a basis for payment of any additional compensation since the claimant was already compensated for the loss of those fingers by reason of amputation.
{¶ 26} "The claimant is denied total loss of use of the right hand under Ohio Administrative Code 4123.57(B). That section required that `the nature of the claimant's employment' is such that the disability or handicap from the amputation `exceeds the normal handicap or disability resulting from the loss of fingers.'
{¶ 27} "While the claimant has a tragic loss that affects many aspects of his daily living as he testified, the statute is only looking at the effect upon the workplace. While the claimant has many additional problems at work, he is still in the same job in which he was at when injured. The claimant hasn't proven that his problem "exceeds the normal" problems encountered by someone with several amputations."
{¶ 28} 10. Further appeal was refused.
{¶ 29} Conclusions of Law:
{¶ 30} At issue in this action is whether the commission abused its discretion in denying claimant's request for a PPD award for the loss of his right hand. For the reasons set forth below, the magistrate finds no abuse of discretion.
{¶ 31} R.C. 4123.57(B) sets forth specific amounts of compensation for the loss of listed body parts. A loss need not have been caused by amputation, and a claimant may recover for the loss of use of a body part. State ex rel. Walker v. Indus. Comm. (1979),58 Ohio St.2d 402.
{¶ 32} R.C. 4123.57(B) states a specific rate of compensation for the loss of each finger, and a specific rate of compensation for the loss of the hand. Here, claimant had already been compensated under R.C. 4123.57(B) for the total loss of each finger, regardless of the fact that three of them were reattached.
{¶ 33} In the motion at issue, he sought an award for the loss of his hand. As the hand was not amputated, claimant was required to prove that he had lost its use. In the alternative, the statute includes a provision for workers who have lost several fingers and whose disability from that loss exceeds the usual disability experienced from it. Where the loss of several fingers is particularly devastating in view of the type of work that claimant did, R.C. 4123.57(B) provides that additional compensation may be awarded up to the amount for the loss of the hand:
{¶ 34} "If the claimant has suffered the loss of two or more fingers by amputation or ankylosis AND the nature of the claimant's employment in the course of which the claimant was working at the time of the injury * * * is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand. (Emphasis added.)
{¶ 35} Accordingly, the statute permits an increased award where the claimant experiences a greater than normal disability from the loss of fingers than other workers would experience, due to the nature of the work claimant was doing when injured.
{¶ 36} Here, the commission explained why this claimant's disability, though severe, was not worse than the usual disability experienced by a worker who loses those fingers. The commission relied on the fact that claimant was able to continue in his job as a supervisor. Although the handicap had a huge impact on claimant overall, it did not stop him from returning to supervisory work and therefore did not cause him to experience a greater disability than usually suffered by a person losing those fingers.
{¶ 37} The commission's rationale was within its discretion. Based on claimant's ability to continue working as a supervisor despite his disability, the commission could reasonably conclude that that the disability he experienced from losing four fingers was not worse than the disability usually suffered by workers with that injury. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.